IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AVCO CORPORATION,

    Plaintiff,

v.                            Civil Action No. 3:08cv402

ROXANNE CHERRY, as
Personal Representative
Of the Estate of
Christopher E. Desch,
Deceased,

    Defendant.

### MEMORANDUM OPINION

This matter is before the Court on Defendant Roxanne Cherry's MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) (Docket No. 6). For the reasons set forth below, Roxanne Cherry's MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) (Docket No. 6) will be granted.

### STATEMENT OF FACTS

On December 10, 2006, Christopher E. Desch ("Desch") was killed in an airplane crash at the Charlottesville-Albemarle Airport. Avco Corporation ("Avco"), under its engine manufacturer trade name, "Lycoming," manufactured the engine of the plane that Desch was flying at the time of the crash. Subsequent to the crash, Desch's wife, Roxanne Cherry ("Cherry"), retained counsel and sought to

examine the aircraft wreckage in an effort to ascertain the cause of the crash.

On January 14, 2008, Cherry's counsel sent a letter to Avco, along with a number of other corporations, inviting the addressees to attend an inspection of the aircraft wreckage.[1] Based on that correspondence, Avco inferred that Cherry was preparing to file a civil action against it. Hence, on January 24, 2008, Avco filed an action in this Court seeking a declaratory judgment.

To support its contention that the declaratory judgment action presented a justiciable "case or controversy," Avco articulated the following facts:

- Cherry has retained an attorney whose practice is "limited to aircraft accident litigation for plaintiffs," and who sought to inspect and disassemble the engine and any components to determine the cause of a purported engine failure;

- Cherry's counsel mentioned a possible action against Avco before that inspection when Avco requested that the evidence be preserved; and

- Cherry has never denied her intention to sue Avco over the December 10, 2006 plane crash.

Pltf's Opp. at 4, 5. The substantive basis of Avco's declaratory judgment action was that any potential claim against it was barred by the eighteen-year statute of

---

[1] For a considerable period of time, the wreckage was held under the jurisdiction of the National Transportation Safety Board for study respecting the cause of the crash, and it was therefore unavailable for examination until shortly before the invitation was issued.

2

repose enumerated in the General Aviation Revitalization Act of 1994 ("GARA"), codified at 49 U.S.C. § 40101 (2008).

In response to Avco's action, Cherry argued that there was no justiciable "case or controversy" present because the mere invitation to attend an inspection of the wreckage and a request for the preservation of possible evidence did not constitute the threat of an "imminent" action against Avco. Def's Mot. at 2. Cherry also contended that the "case or controversy" requirement could not be satisfied because GARA's substantive applicability depends on: (1) the exact airplane components alleged to have failed, and those components had not yet been identified; and (2) whether Avco had been "candid" with the FAA regarding its knowledge of any safety issues with respect to those parts/components, an issue which was allegedly unclear at the time.

On March 24, 2008, the Court granted Cherry's Motion to Dismiss, without prejudice, and held: "at the present time, there is no justiciable case or controversy between the parties, and that, therefore, there is a lack of subject matter jurisdiction in this action . . . ." Court's 3/24/2008 Order (emphasis added). On April 22,

3

2008, Avco filed a notice of appeal with the United States Court of Appeals for the Fourth Circuit.[2]

On July 27, 2008, Avco filed this action, again seeking a declaratory judgment on the ground that any possible claim against it would be time-barred by GARA's statute of repose. Although the legal posture of this action remains the same as when Cherry's previous Motion to Dismiss was granted, Avco now claims that four subsequent factual occurrences "have [sufficiently] crystallized the issues further such that the Court [should] now conclude that a case and controversy exists." Pltf's Opp. at 1. Those additional facts and circumstances, which allegedly took place after the January 2008 action was dismissed and before this action was filed include:

- On June 23, 2008, Cherry's retained aviation counsel stated that he now had "definite views of the cause of engine failure;" a statement which allegedly stands in contrast to the ambivalent statements of Cherry's counsel during the time that the January 2008 motion was pending;

- In another letter, Counsel for Cherry implicitly threatened to sue Avco and others for the crash if Avco would not take steps to preserve evidence;

- Cherry and her experts subsequently conducted another inspection of the aircraft wreckage; and

- Cherry and her experts have now identified a relatively small number of "specific engine components and accessories for further inspection."

---

[2] That appeal has been dismissed by Order of the Court of Appeals.

4

Pltf's Opp. at 7, 8.

Notwithstanding these so-called "crystallizing" facts, Cherry claims that "this newest lawsuit is virtually the same as [the first].   The only difference is that this lawsuit adds allegations which [Avco] perceives as increasing the so-called 'threat' of a lawsuit from Mrs. Cherry."   Pltf's Mot. at 3.   Based on the "virtual identity" of this action and the January 2008 action which was previously dismissed by this Court, Cherry has again moved to dismiss Avco's suit on the basis of:  (1) collateral estoppel; (2) the Court's lack of subject matter jurisdiction; (3) the prevailing jurisprudence under the Declaratory Judgment Act; and (4) the Anti-Injunction Act. See Def's Mot. at 5.   Also, it is undisputed that on September 22, 2008, after this action was filed, and after Cherry had moved to dismiss this action, Cherry filed a civil action in state court in Virginia against Avco, alleging that certain replacement parts made by Avco were defective and contributed to the cause of the crash.

## DISCUSSION

### I.   The Motion To Dismiss For Lack Of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction are decided under Fed. R. Civ. P. 12(b)(1).

5

In assessing such a motion, "[t]he plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court." Biktasheva v. Red Square Sports, Inc., 366 F. Supp. 2d 289, 294 (D. Md. 2005). "When a defendant challenges subject matter jurisdiction by way of a motion to dismiss filed under Rule 12(b)(1), the district court may regard the pleadings as evidence on the issue and also may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004). Nevertheless, "[t]he court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Biktasheva, 366 F. Supp. 2d at 294 (citation omitted).[3]

---

[3] In the alternative, Cherry requests that the Court dismiss Avco's declaratory judgment action under Fed. R. Civ. P. 12(b)(6). Def's Mot. at 10 n.3. Unlike a motion to dismiss for lack of subject matter jurisdiction filed under Rule 12(b)(1), however, when assessing a motion to dismiss under Rule 12(b)(6), the Court cannot consider materials outside of the pleadings. Robinson v. Ladd Furniture, Inc., 1993 U.S. App. LEXIS 14252, at *8 (4th Cir. June 14, 1993). Because Cherry evidently contends that the consideration of extra-pleading material is essential to the determination of whether a "case or controversy" exists in this case, see Def's Mot. at 24-26, Cherry's Motion to Dismiss will be addressed under Rule 12(b)(1). See Jasso v. USDA Forest Serv., 2008 U.S. Dist. LEXIS 73204, at *2 (E.D. Cal. Aug. 15, 2008) (recommending dismissal under Rule 12(b)(1) instead of Rule 12(b)(6) due to consideration of "material outside the pleadings").

## II.  Collateral Estoppel

Collateral estoppel forecloses "the re-litigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." Ramsay v. INS, 14 F.3d 206, 210 (4th Cir. 1994) (citation omitted).  For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the relevant issue was actually determined in the prior proceeding; (3) the determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment was final and valid; and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.  Id.

Cherry argues that all of the requirements for the application of collateral estoppel are satisfied in this "nearly identical" second action, and that Avco is thereby collaterally estopped from bringing this action.  Def's Mot. at 6.  In response, Avco argues that because the first action was dismissed without prejudice, the judgment was

not "final and valid." Pltf's Opp. at 6. Therefore, collateral estoppel allegedly does not bar its claim. Id.

As a number of courts have held, dismissals without prejudice do not constitute a "final determination" to which collateral estoppel can be applied. See, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990) ("[D]ismissal . . . without prejudice is a dismissal that does not operat[e] as an adjudication upon the merits under Rule 41(a)(1), and thus does not have a res judicata effect."); Lynk v. LaPorte Superior Court No. 2, 789 F.2d 554, 566 (7th Cir. 1984) ("by definition," neither res judicata nor collateral estoppel arise from a dismissal without prejudice). Moreover, although it is true that such dismissals without prejudice "still operate to bar re-litigation of [the substantive] issues actually decided by that former judgment," Goldsmith v. Baltimore, 987 F.2d 1064, 1069 (4th Cir. 1993), the issue decided by the Court's dismissal of Avco's first action was purely jurisdictional in nature. Therefore, collateral estoppel has no application to this declaratory judgment action.[4]

---

[4] Avco also argues that "a change in the factual background of a case, such as that presented here, precludes an application of collateral estoppel." Pltf's Opp. at 7 (citing Fairmont Aluminum Co. v. Comm'r., 222 F.2d 622 (4th Cir. 1955)). Consideration of this argument is unnecessary to the resolution of the issue. Nevertheless, the factual differences between the present and prior action affect the Court's analysis of subject matter jurisdiction and are so considered, infra.

### III. Subject Matter Jurisdiction

Federal standards guide the inquiry as to the propriety of declaratory relief in federal court. White v. National Union Fire Ins. Co., 913 F.2d 165, 167 (4th Cir. 1990). The Declaratory Judgment Act ("DJA") provides that "in a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Hence, a declaratory judgment action, like any other proceeding heard by a federal court, must present an actual "case or controversy" within the meaning of Article III of the Constitution. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 ("The [Declaratory Judgment Act] is operative only in respect to controversies which are such in the constitutional sense."). The DJA itself cannot confer subject matter jurisdiction upon a federal court. Ceres Terminals, Inc. v. Indus. Comm'n of Ill., 53 F.3d 183, 185 (7th Cir. 1995). Instead, a declaratory judgment plaintiff must establish an independent basis for subject matter jurisdiction. Id.

In the Fourth Circuit, two conditions must be satisfied for a district court to have jurisdiction to issue a declaratory judgment. White, 913 F.2d at 167.

9

First, the dispute must be deemed a "case or controversy" within the confines of Article III of the United States Constitution - the "constitutional" inquiry. Id. Second, the district court, in its discretion, must be satisfied that declaratory relief is jurisprudentially appropriate - the "prudential" inquiry. Id.

A. The "Constitutional Inquiry" Under The DJA

The test for a justiciable "case or controversy" under Article III is whether the dispute underlying a declaratory judgment "is definite and concrete, touching the legal relations of parties having adverse legal interests." Id. (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)). Accordingly, the controversy "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." White, 913 F.2d at 167. In short, the totality of the circumstances must show a live and solidified controversy. See MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007) (jettisoning the "reasonable apprehension" of litigation test to establish a case or controversy).

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act

is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Miller v. Augusta Mut. Ins. Co., 157 Fed. Appx. 632, 637 (4th Cir. 2005) (citation omitted). The question, therefore, is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). Importantly, in determining whether a justiciable case or controversy exists, the Court asks whether a controversy existed "at the time of the commencement of the action." Golden v. Zwickler, 394 U.S. 103, 108 (1969). Therefore, events subsequent to the filing of this action have no bearing on the Court's constitutional analysis.[5] See id.

### i.   The Status Of The Putative Lawsuit At The Time That Avco's Action Was Filed

It is clear that a party need not wait to be sued before seeking a declaratory relief in federal court. See

---

[5] Accordingly, Avco's argument that the dispute in this matter is sufficiently "crystallized" for resolution in part because after Avco filed this action, Cherry in fact did file an action against Avco in state court, is of no moment to the Court's analysis respecting whether there is subject matter jurisdiction in this case. See Def's 9/26/2008 Letter.

11

*Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779, 784 (E.D. Va. 2007).  Indeed, the efficient resolution of putative lawsuits remains one of the principal virtues of the DJA.  See *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937).  Pursuant to the foregoing, however, the presumed lawsuit which forms the basis of a party's declaratory judgment action must still be of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Casualty Co.*, 312 U.S. at 273.  Accordingly, irrespective of the asserted uncertainties regarding the substantive GARA issues in the case, the Court must still determine whether the dispute between Avco and Cherry satisfies the standard for a live "case or controversy," as set forth in *Maryland Casualty Co.*

Avco's contends that, at the time of filing, it possessed a "well-founded belief that litigation with regard to the accident [was] imminent and inevitable." Pltf's Opp. at 2.  An objective view of the circumstances surrounding the filing of this action, however, refutes Avco's contention.  Foremost, Avco has pointed to Cherry's multiple inspections of the airplane wreckage as a basis for its belief that Cherry intended to file an action against it.  Pltf's Opp. at 8.  Nevertheless, Cherry is

12

able to convincingly detail numerous prior airplane crashes involving Avco component parts where, after inviting Avco to attend the inspection of the airplane wreckage, counsel for Cherry either *never filed* an action against any party or specifically did not take action against Avco. Def's Mot. at 28-30. Therefore, this "crystallizing" evidence is unpersuasive.

Furthermore, Avco argues that certain additional facts have increased the "threat" of a lawsuit by Cherry since the prior action was dismissed. In making this point, Avco substantially relies on a January 2008 letter, where counsel for Cherry stated, "If you would prefer us to file suit against your client before this inspection takes place, we will be pleased to accommodate you . . . . [W]e will promptly file suit here in Philadelphia against Lycoming for interference with our investigation in order to conceal its liability for the death of Dr. Desch." See Pltf's Opp. at 3. Read in context, however, this threat actually relates to Cherry's concern that Avco's potential discovery techniques would spoliate evidence. Additionally, other correspondence from Cherry evinced a clear desire to wait until the investigation was complete before bringing suit so as to "avoid bringing unnecessary parties into the litigation." See Def's Mot. at 29. As

13

such, the January 2008 letter does not actually lend credence to Avco's belief that Cherry possessed the "ever-present intention to file a personal injury action against [Avco]" for its role in the airplane crash. Pltf's Opp. at 4.

Therefore, based on the foregoing, it is evident that the dispute between the parties is not of "sufficient immediacy" for the Court to maintain jurisdiction over this action.

### ii. The Allegedly Unresolved GARA Issues

Cherry also asserts that there was no "case or controversy" when this action was filed because the then-existing circumstances were purely hypothetical as to the application of GARA's statute of repose. Def's Mot. at 20. Thus, says Avco, there was no substantial, solidified controversy. See White, 913 F.2d at 167.

Specifically, Cherry contends that the uncertainty respecting key facts about the 2006 airplane crash prevented a "real and substantial controversy" from being present when this action was filed. Def's Mot. at 21. In that respect, Cherry's contention is grounded on the fact that GARA sets forth "two separate and mutually exclusive 18-year periods of repose," both of which, says Cherry, are

14

inextricably intertwined with unresolved facts. <u>Id.</u> That

point is well-taken. GARA provides:

> No civil action for damages for death or
> injury to persons or damage to property
> arising out of an accident involving a
> general aviation aircraft may be brought:
>
>> (1) *after the applicable limitation
>> period
>> beginning on -*
>>
>>> (A) the date of delivery of the
>>> aircraft to
>>> its first purchaser or lessee, if
>>> delivered
>>> directly from the   manufacturer;
>>> or
>>>
>>> (B) *the date of first delivery of
>>> the aircraft to a person engaged
>>> in the business of selling or
>>> leasing such aircraft;* or
>>
>> (2)  with respect to *any new component,*
>> system,  subassembly,  or  other  part
>> which replaced another  . . . or which
>> was added to, the aircraft, and which
>> is alleged to have caused such death,
>> injury, or damage, *after the applicable
>> limitation period beginning on the date
>> of completion of the replacement or
>> addition.*
>>
>> (3) The term "limitation period" means 18 years
>> with respect to general aviation aircraft . . . .

49 U.S.C. § 40101(2) (emphases added).

     The text of GARA makes clear that the first 18-year

period of repose does not bar claims based on the failure

of airplane components which have been replaced within the

applicable limitation period. <u>Id.</u>   Thus, the proper

resolution of any claim respecting GARA's statute of repose requires knowledge of the *specific* parts or components alleged to have caused the crash in question. Those specific parts are not known at this time and are seriously contested.

Moreover, even if the Court could determine the specific parts/components which allegedly caused the 2006 crash, there would still be an unresolved question as to whether GARA bars Cherry's suit. This is because the applicability of GARA's statute of repose also depends on the defendant's "history of candidness" with the FAA respecting its knowledge of any malfunctions, defects, or failures in the part(s) or component(s) at issue. GARA provides:

> Exceptions: Subsection (a) does not apply if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered.

Id.  Hence, the proper resolution of the issues respecting GARA's statute of repose would also necessitate an inquiry into whether Avco had satisfied the candor to the FAA requirement regarding the component part(s) which allegedly contributed to the crash.  See id.  Therefore, it is clear, as Cherry contends, that "the resolution of [Avco's] GARA issue plainly requires a component-specific analysis that looks to the date of each engine component's first installation, and [to] the historical representation of the safety of that component to the FAA."  Def's Mot. at 23.

On the circumstances existent when Avco filed this action, the Court was called upon to render an opinion on a hypothetical set of facts in order to adjudicate the applicability of GARA's statute of repose.  In response, Avco contends that this is not so; that "what is [simply] required here is not speculation but discovery," and that "the necessity of discovering certain facts does not render this action impermissibly speculative or lacking an actual controversy."  Pltf's Opp. at 9.  Accordingly, Avco suggests that the Court entertain its action while also ordering discovery.  Id.

Avco is certainly correct that discovery is available in declaratory judgment actions.  See, e.g., Medical Protective Co. v. Bubenik, 2008 U.S. Dist. LEXIS 34697

17

(E.D. Mo. Apr. 28, 2008) (the court "allowed discovery to continue on the plaintiff's declaratory judgment action"). Nevertheless, discovery on the applicability of GARA's statute of repose is an insufficient mechanism to cure the asserted lack of subject matter jurisdiction that existed when this action was filed.

As explained above, to satisfy the constitutional "case or controversy requirement," an action must "admit[] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." White, 913 F.2d at 167.  In this case, although Avco asserts that that Cherry has now identified a "small number of parts which represent the universe of possible parts which may have caused this accident," at the time of filing, Avco had still not identified the *specific* engine parts that allegedly caused the airplane crash.  Pltf's Opp. at 2.  Consequently, because it was not clear what issues, events, or physical objects *would even have been the proper subjects of discovery* at that stage of the proceedings, discovery would be open-ended and speculative. Accord Veoh Networks, Inc. v. UMG Recordings, Inc., 522 F. Supp. 2d 1265, 1269-70 (S.D. Cal. 2007) ("[B]ecause Plaintiff does not reference any specific copyright, even

18

by way of example, the relief requested would necessarily take the form of an advisory opinion. Succinctly, the Court cannot determine whether a safe harbor for copyright infringement exists without knowing which rights are at stake.").

Furthermore, it was equally unclear whether Cherry could, or even intended to, assert Avco's lack of candor to the FAA as a basis for avoiding the strictures of GARA's statute of repose. See 49 U.S.C. § 40101(2). Consequently, Avco's purported solution of additional discovery would require the Court to order a protracted and speculative inquiry into an issue that had, at that point in time, not even been put in issue by Cherry.

These particular factual uncertainties have remained static since the January 2008 action filed by Avco. Therefore, because the resolution of the GARA issue would necessarily require the Court to speculate on a "hypothetical set of facts," Avco's declaratory judgment action fails to satisfy the "case or controversy" requirement of Article III and is dismissed on that basis.[6] Cf. Texas v. United States, 523 U.S. 296, 300 (1998) (An

---

[6] The fact-dependent nature of GARA's statute of repose sets it apart from other straightforward statutes of repose where courts have reached the merits of a declaratory judgment action. See Delon Hampton & Assoc., Chartered v. Washington Metro. Area Transit Authority, 943 F.2d 355, 360 (4th Cir. 1991) (where there was no factual dispute as to when the five-year statute of repose began to run).

issue is not fit for review if "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (discussing ripeness).

## B. Prudential Concerns Under The DJA

The DJA also raises a number of "prudential" issues for courts to consider. As the Supreme Court has held, "[through] the Declaratory Judgment Act, Congress . . . created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to "considerations of practicality and wise judicial administration." Id. Assuming arguendo that the Court has subject matter jurisdiction over Avco's claim, certain "prudential" considerations nonetheless militate in favor of dismissing Avco's declaratory judgment action.

### i. The "Perversion Of The DJA"

The courts which have faced the issue have consistently held that it is a "perversion" of the DJA for alleged tortfeasors to attempt to obtain declarations of non-liability when the injury from the alleged tort has already occurred. Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1167-68 (7th Cir. 1969). Addressing a litigation

20

posture identical to this action, the Seventh Circuit held that "to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tortfeasor would be a perversion of the Declaratory Judgment Act." Id. The "primary purpose" of the DJA is "to avoid accrual of *avoidable damages* to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." Id. (emphasis added); see e.g., Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 426 (S.D.N.Y. 2002) ("[W]here the purported use of the DJA seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving rights already accrued by reason of alleged wrongful conduct, various courts have held that that application is not a warranted purpose of the DJA."). Consequently, courts have made clear that the mere assertion of an "anticipatory defense" to a historical event does not constitute a legitimate use of the DJA. See, e.g., Sun Oil Co. v. Transcontinental Gas Pipe Line Corp., 108 F. Supp. 280, 282 (E.D.Pa.1952), aff'd, 203 F.2d 957 (3d Cir. 1953); Voeh Networks, Inc. v. UMG Recordings, Inc., 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007).

Therefore, in cases such as this, where the underlying injury has already been fully realized by the declaratory-judgment defendant, the clear weight of authority dictates that the Court should exercise its discretion and dismiss Avco's claim under the DJA.

### ii. Securing A Federal Forum

Courts also have held that, "where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue." Morrison v. Parker, 90 F. Supp. 2d 876, 880-81 (W.D. Mich. 2000); accord Sun Oil Co., 108 F. Supp. at 282.

In this case, it appears that Avco has filed this action in federal court precisely to avoid having the prospective case against it tried in state court. Indeed, subsequent to the filing of its Motion to Dismiss, it is telling that Cherry sued Avco, among others, in Virginia state court, asserting only state-based claims against non-diverse defendants. See Def's 9/26/2008 Letter. Thus, it is evident that "but for" the filing this preemptive lawsuit, Avco would have been required to litigate its asserted affirmative defense under GARA in state court. This kind of tactical use of the DJA provides an additional

22

reason for the Court to exercise its discretion and dismiss the case.  See Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) ("The object of the [DJA] is . . . not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states.").

### iii.  The Pending State Court Action

Cherry also argues that by seeking an adjudication that Cherry's potential suit is barred, "[Avco] is essentially asking this Court to enjoin [the currently-pending] state court litigation."  Def's Mot. at 22. Cherry frames this argument as a violation of the "Anti-Injunction Act."  Id.  Because Avco has not sought to enjoin the ongoing state proceeding, the label applied to this argument by Cherry is not correct.  The argument that Cherry makes, is, however, in reality, an argument for abstention in the exercise of federal jurisdiction.

Where, as here, the state court action was filed after the federal action, abstention is seldom appropriate.  See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) ("[a]bstention should rarely be invoked").  It is, however, not necessary to assess the abstention issue because the two previously-discussed

23

prudential concerns sufficiently counsel in favor of dismissing Avco's declaratory judgment action.

## CONCLUSION

For the foregoing reasons, Cherry's MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) (Docket No. 6) is granted.

It is so ORDERED.

_____/s/_____  *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  December 15, 2008

24